Case No. _____

Steven Lasoff
217 Wyckoff Road
Eatontown, New Jersey 07724
(732) 241-2000
Plaintiff in Pro Se

RECEIVED

APR 23 2015

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEVEN LASOFF, Plaintiff,
v.
AMAZON.COM, INC., Defendant.
_____/

Case No: 15-2886
(MAS/DEA)

## COMPLAINT

**COMES NOW**, Plaintiff Steven Lasoff, *pro-se* and sues the Defendant, Amazon.com Inc. and in support thereof states the following is true to the best of his knowledge:

### PARTIES

1. Plaintiff Steven Lasoff ("Lasoff") is a New Jersey resident and sole proprietor that maintains its principal place of business at 217 Wyckoff Road, Eatontown, New Jersey 07724. Lasoff is in all regards *sui juris*.

2. Defendant Amazon.com, Inc. ("Amazon") is a Washington corporation that maintains its principal place of business at 410 Terry Avenue North Seattle, Washington 98109. Amazon is in all regards *sui juris*.

### JURISDICTION AND VENUE

3. This is an action for trademark infringement and unfair competition under the Lanham Act 15 U.S.C. §1125(a), false advertising under the Lanham Act 15 U.S.C. §1125(a), unfair competition under New Jersey State law, N.J.S.A. 56: 4-1, unfair competition under the common law of the State of New Jersey, trademark infringement under the New Jersey Trademark Act, N.J.S.A. § 56:3-13.16, tortious interference with prospective economic advantage under the common law of the State of New Jersey, gross negligence under the common law of the State of New Jersey, and monopolization under §2 of the Sherman Act.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 1338(a) and (b), as well as 28 U.S.C. §1332 as there is complete diversity of citizenship between

1

the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs, and pursuant to this Court's supplemental jurisdiction under 28 U.S.C. §1367.

5. Venue is proper in the District of New Jersey as Plaintiff resides there and the majority of the actions complained of occurred there.

## SUMMARY OF RELEVANT FACTS

### LASOFF AND INGRASS

6. Lasoff, an individual and resident of the State of New Jersey, is the founder and owner of "InGrass." InGrass is a sole proprietorship that has been in business since 2004.

7. On August 7 2004, Lasoff purchased the domain www.ingrass.com.

8. Since August 2004, Lasoff has used the domain www.ingrass.com to sell artificial turf and related products.

9. Since August 2004, Lasoff developed www.ingrass.com into a profitable online retailer of artificial turf and turf related products.

10. Since 2004, Lasoff has used the trademark "InGrass" in interstate commerce through his website www.ingrass.com and through online search engine advertising.

11. Lasoff developed profitable online marketing and advertising techniques for InGrass. Lasoff's success depended on the use of paid, targeted, search engine advertising in platforms such as "Google Ads," amongst others to attract potential customers of artificial turf products to Lasoff's website www.ingrass.com.

12. Lasoff developed successful business web presence for www.ingrass.com. Lasoff invested a substantial amount of time, money, and resources in developing InGrass's web presence. Lasoff also developed a positive business reputation amongst his customers through the sale of quality product, insuring on-time delivery, and providing effective customer support.

13. Lasoff also sold his InGrass brand of artificial turf products on online marketplaces including Defendant's website and domain.

### LASOFF'S BRAND IMITATED THROUGH AMAZON

2

14. The InGrass artificial turf product that Lasoff sold had specific qualities. These qualities included: Fescue design/color, heavy rubber backing, drainage holes, 46-ounce weight, Made-In-the-USA, and certified lead-free product composition.

15. InGrass experienced a steady and substantial rise in the sale of its artificial turf products between 2009 and mid-2013. Lasoff noticed a substantial decrease in sales of products on www.ingrass.com. Lasoff accounted the decrease in sales to: a) Amazon's superior online advertising buying power and b) Amazon's superior web presence. Lasoff accepted this narrative of his sales decrease via www.ingrass.com

16. Lasoff noticed a substantial drop in sales of his company's products in early August 2013. Lasoff conducted an investigation to determine the cause of the sales slump, and he discovered that Amazon allowed multiple sellers to add their artificial turf products under InGrass's product listings on www.amazon.com and were falsely identifying their artificial turf product as InGrass artificial turf product. Moreover, the false product was advertised and sold at a substantially discounted price, maliciously undercutting Lasoff's sales and misleading potential and existing customers of InGrass artificial turf products. Lasoff is the sole exclusive owner and seller of the InGrass brand and no other individuals or entities of any kind have any rights to his brand, trademark, or trade name.

17. Lasoff's investigation also involved test purchases of the products offered on www.amazon.com. Inspection of the products purchased by Lasoff revealed that the artificial turf products are materially different from the products sold by InGrass. Specifically, the other sellers' products are substantially different in their composition, quality of materials, color, texture, thickness, weight, country of origin, drainage, etc.

18. Lasoff's investigation also involved searches, in major online search engines, of various keywords relating to his brand including the search terms "InGrass", and "InGrass.com", amongst others. To wit, Defendants have appropriated the term "artificial turf" creating a *de facto* monopoly. Lasoff found that when he searched these keywords Amazon's paid advertisements surfaced alongside InGrass's paid advertisements. Prior to the false product being listed on www.amazon.com, Lasoff was neutral about Amazon's dominance in online search engine advertising as it was part of the natural course of fair business practices (so he thought). Because the product on Amazon was not InGrass product, and sold at a substantially lower rate, Lasoff lost a substantial amount of his business on www.ingrass.com.

## AMAZON ON NOTICE OF THE INFRINGEMENT AND FALSE ADVERTISING OF THE INGRASS TRADE NAME

Case No. _____

19. In August 2013, Lasoff emailed Customer Support at Amazon for help with the situation involving the misuse of the InGrass brand on www.amazon.com and through Amazon's online advertising. On August 14 2013, Amazon told Lasoff in an email:

> "Please understand our investigations team has researched in the issue and have taken appropriate action which is necessary."

20. Lasoff was given a Case ID #108071791. Amazon stated in a follow up email that the case was forwarded to the "Internal Investigations Department" of Amazon.

21. In September 2013, Lasoff received an email from Amazon stating:

> "Please rest assured we are currently working on your case."

22. In November 2013, Lasoff was contacted directly by Mr. William Edison ("Edison"), an attorney at an outside firm representing Amazon in Seattle, Stoel Rives LLP.

23. On January 4 2014, Lasoff raised the issue to Edison in an email about Amazon using the keyword "InGrass" and "InGrass.com" in its online search engine advertisements. Lasoff asked Edison to stop falsely promoting and advertising InGrass in light of the detriment it was causing to Lasoff's website sales on www.ingrass.com as well as the detriment to Lasoff's business reputation regarding the misrepresentation of InGrass product.

24. In February 2014, Lasoff emailed Edison and Amazon's CEO Mr. Jeffrey Bezos a detailed list of all employees and persons at Amazon who had direct knowledge of the misuse of the InGrass brand.

25. On March 4 2014, Edison sent Lasoff an email stating the following:

> "As I have indicated previously, your allegations related to infringement are against the third-party sellers that are using your alleged mark, and not against Amazon. Nonetheless, in an effort to resolve this matter, can you please provide me with any evidence you have of your right to use the "Ingrass" name. For example, any documentation showing that you own the website, the name "Ingrass," or otherwise have the exclusive right to use the name."

26. Lasoff was confused by Edison's email. Amazon, not third party sellers, were fully responsible, and continue to be fully responsible, for knowingly falsely advertising and promoting the InGrass brand amongst major online search engines.

4

Case No. _____

27. After Lasoff satisfied Edison's request proving his ownership and exclusive rights to the InGrass trade name, Lasoff again brought up to Edison in an email on March 14 2014 the issue involving the infringement of InGrass's trade name in Amazon's online search engine advertisements. Lasoff stated the following in an email:

> "Certainly Amazon keywords on search engines are generated through and paid for by Amazon, and has nothing to do with third parties. Furthermore, through countless contacts, emails and physical evidence, there is not a shade of doubt that Amazon knowingly, has allowed fraudulent sales through these third parties for the past 8 months."

28. In March 2014, Edison assured Lasoff in a phone call that Amazon would remove all sellers and products on www.amazon.com false identifying as InGrass. Edison also mentioned to Lasoff during that phone call that Amazon was experiencing "personnel issues."

29. Edison apologized to Lasoff in March 2014 and told Lasoff Amazon is taking "longer than expected" to remove the product falsely identifying as InGrass. Amazon through its agent Edison admitted openly that they were aware both of the false identification on their site and the fact that they were not taking a commercially reasonable amount of time to respond.

30. Communication with Edison in April 2014 further proved that Amazon was in agreement with Lasoff about the fact that his brand name was being falsely represented on www.amazon.com.

31. On April 4 2014, Edison told Lasoff all of the products and sellers falsely identifying as InGrass were removed from www.amazon.com, stating the following in an email:

> "I understand that yesterday Amazon removed all third-parties who had products listed against the ASINS you identified. Please let me know if you have any questions."

32. In the three-day period after the April 4 2014 removal of product on www.amazon.com falsely identifying as InGrass, sales for Lasoff on Amazon substantially increased. However, after this three-day period, all products falsely representing the InGrass brand resurfaced on www.amazon.com. Amazon did not permanently remove product misrepresenting the InGrass brand on www.amazon.com despite representations to the contrary.

33. On January 15 2015, Edison again told Lasoff that all products on www.amazon.com misrepresenting InGrass's brand were removed from www.amazon.com. However, as of the date of this complaint, Amazon has failed to take any affirmative action to effectively and permanently remove the listing of misleading and falsely advertised products. Similarly, Amazon has failed to communicate with Lasoff about a resolution to this situation, even after Lasoff retained an attorney to try to reach a reasonable resolution with Amazon.

## DAMAGES TO LASOFF

34. In the meantime, Lasoff has incurred significant financial losses resulting from Amazon continuing to promote, advertise, and sell artificial turf products that are falsely advertised as InGrass product.

35. Lasoff has lost significant online traffic and sales through its website www.ingrass.com. This loss of business is a result of Amazon's monopolization of online traffic that is generated from search engines (e.g., Google.com, Bing.com, Yahoo.com, etc.), because Amazon pays the search engines to direct online consumers to Amazon's site when consumers search for retail products. In addition, Amazon actively promotes the sale of retail products on its site, by paying search engines to send advertisements to online consumers on behalf of Amazon rather than on behalf of the sellers of the products. Thus, consumers searching for products sold by InGrass are directed to product misrepresenting the InGrass brand on www.amazon.com.

36. On August 4 2014, Lasoff filed a complaint with Google Adwords ("Google") against Amazon. Google sent the following email to Lasoff disclaiming liability on the matter and encouraging Lasoff to resolve the issue with Amazon directly:

> Hi Steve,
>
> Based on business considerations, it is Google's policy not to accept ads selling counterfeit goods. Google takes allegations such as these very seriously, and will remove advertisements that are allegedly selling counterfeit goods. However, some sites such as market-place sites may contain and sell multiple products and services from various sources, and have their own takedown policies regarding alleged counterfeit sales. It appears that the following URLs within your complaint fall within this category:
>
> amazon.com
>
> As a result we are unable to take action on these sites. We encourage you to contact the site owner directly in this instance.

Case No. _____

> Best regards,
> Kaley
> Legal Advertising Support Team

37. Since August of 2013, Amazon has been promoting "InGrass", "InGrass.com", and various search terms for artificial turf within the online advertising market, in over 40 search engines. Amazon is amongst the top buyers of online advertising in the United States.

38. Further, Amazon sends bi-weekly emails promoting InGrass turf products and the trademark InGrass on Amazon. These promotions are product misperceived by the public to be under the InGrass brand but in actuality is not InGrass product.

39. Although Amazon has purportedly investigated this complaint during the two years that have passed since Lasoff first notified the online retailer of the misrepresentation and false advertising of the InGrass trade name, Amazon has negligently handled this matter causing significant detriment to Lasoff and InGrass in the form of loss of sales, loss of goodwill, infringement of trademark and more.

40. Mr. Lasoff experienced a great amount of stress and detriment to his well being as a result of the aforementioned. In 2014, Mr. Lasoff was diagnosed with a gastric ulcer via MRI (magnetic resonance imaging).

**AMAZON'S ONLINE AD-CAMPAIGN DYNAMICS**

41. Amazon operates an online marketplace known widely as amazon.com. *Exhibit A.*

42. Sellers (like InGrass) list product, through Amazon's platform, in their marketplace. Amazon may or may not make known to these companies that one such benefit is proliferation of their goods through off platform advertisements, but all such advertisements are the property and product of Amazon. *Exhibit B – fake "InGrass" products on amazon.com.*

42. Amazon wants to attract online consumers to products in their marketplace, listed by sellers this keeps Amazon in business as it takes a percentage as commission.

43. Amazon profits off the success of the products it puts on its advertisements.

44. Amazon pays major search engines like Google, Bing, etc. for advertising space in their platforms. So when consumers search for product on these search engines, Amazon

Case No. _____

will come up in the top results. Above all the other products the search engines algorithm produces. The more you pay in online advertising, the higher priority your keywords are in the search. *See Exhibit C- same products listed by Amazon in advertisements.*

45. Search engine technology is dominated by a few key players (Google, Bing, etc.) and Amazon has contracted with a majority of the market players to stifle all competition in the largest market place in the history of mankind – the Internet. *Composite Exhibit D- search engine market data, Amazon's domination of major search engine advertising.*

46. Amazon uses the names of products and sellers (like InGrass) listed in their marketplace as keywords in their advertisements on search engines and in email marketing blasts.

47. The sellers on Amazon **do not** advertise product in this ad space; only Amazon pays for advertising and promotion of www.amazon.com and products listed on www.amazon.com.

48. Here, Amazon is paying, knowingly, to falsely advertise the "InGrass" trade name and Marks in search engines to increase sales in their marketplace, so the share collected on commissions increase.

49. This ad domination throughout the Internet is not being done by other third parties, these are willful, wanton and unlawful acts perpetrated by Amazon for the benefit of Amazon. All ancillary benefit to third parties is secondary and latent to Amazon's ultimate goal.

## COUNT I: TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

50. Plaintiff repeats the allegations of paragraphs 1-49 as if fully set forth here.

51. This is a claim under the Lanham Act §15 U.S.C. §1125(a) for Trademark Infringement and Unfair Competition. In order to establish a claim under this section Plaintiff need only show that (i) Plaintiff's mark is protected, (ii) Defendant's use of the infringed mark would likely cause confusion as to the origin or sponsorship of the Defendant's good with Plaintiff's goods.

52. The Defendant's online advertisement and marketing use of the InGrass trade name is in a manner that is likely to cause, and has actually caused, confusion, mistake, and deception as to the sponsorship, endorsement, and/or affiliation, connection, or

association between InGrass and the Defendant's product which is materially misrepresenting InGrass.

53. Specifically, Defendant's online advertisements list none "InGrass" brands as "InGrass" products, through online advertisements that clearly mark the brand as "InGrass" when it is not. This damages Plaintiff's reputation, profits, goodwill and Plaintiff is entitled to relief.

54. The confusion, mistake or deception referred to herein arises out of aforesaid acts of the Defendant, constituting unfair competition and trademark infringement in violation of Section 43(a) of the Lanham Trademark Act of 1946, as amended, 15 U.S.C. §1125(a) thereby entitling the Plaintiff to equitable relief, as prayed for herein, and damages according to proof to the fullest extent allowed by law.

### COUNT II: FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

55. Plaintiff repeats the allegations of paragraphs 1-54 as if fully set forth here.

56. This is an action for False Advertising under 15 U.S.C. §1125(a). In order to establish a claim under this section Plaintiff need only show "any false description or representation, including words or other symbols tending falsely to describe or represent when used in connection with any goods or services." 15 U.S.C. §1125(a); 505 U.S. 763 at 785.

57. The Defendant's advertisements promoting the InGrass trade name are literally false.

58. The statements made in the Defendant's advertisements regarding the InGrass trade name actually deceived, or has a tendency to deceive, a substantial segment of online artificial turf consumers as evidenced by the changes in sales that Plaintiff can observe when Defendant actually polices its website.

59. The deception in the Defendant's advertisements is material in that it is influencing purchasing decisions of online artificial turf consumers. In the alternative, the deception in the Defendant's advertisements is material in that it is likely to influence purchasing decisions of online artificial turf consumers.

60. The Defendant caused the advertisement to enter into interstate commerce. Furthermore Defendant cannot hide behind its size as multiple employees at multiple levels of the company, including counsel and CEO were put on notice by Plaintiff, to wit, they acknowledged this fact in correspondence.

61. The aforesaid acts of the Defendant constitute false advertising in violation of Section 43(a) of the Lanham Trademark Act of 1946, as amended, 15 U.S.C. §1125(a) thereby entitling the Plaintiff to equitable relief, as prayed for herein, and damages according to proof to the fullest extent allowed by law.

### COUNT III: NEW JERSEY UNFAIR COMPETITION
### N.J. STAT. § 56: 4-1

62. Plaintiff repeats the allegations of paragraphs 1-61 as if fully set forth here.

63. This is a claim under N.J.Stat. §56: 4-1 for Unfair Competition. Except for the requirements regarding interstate commerce the burden of proof on Plaintiff in this regard is identical to the burden placed under Count I.

64. Defendants' unauthorized use of the InGrass trade name does cause confusion, mistake or deception as to the source or affiliation of Defendants' products and services. In the alternative Defendants' unauthorized use of the InGrass trade name is likely to cause confusion, mistake or deception as to the source or affiliation of Defendants' products and services.

65. Defendants' unauthorized use of the InGrass brand in connection with Defendants' products and services allows the Defendant to receive the benefit of Plaintiff's goodwill, which Plaintiff has established at great labor and expense.

66. The acts of the Defendant complained of herein constitute unfair competition in violation of the New Jersey Unfair Competition Statute (N.J. Stat. § 56: 4-1).

67. The acts of the Defendant complained of herein were committed willfully.

68. As a result of the Defendant's actions, Plaintiff has been harmed, and will continue to be harmed and will suffer irreparable injury unless the Defendant is enjoined from the foregoing actions. Plaintiff also prays for all money damages allowable to the fullest extent of the law.

### COUNT IV: NEW JERSEY COMMON LAW UNFAIR COMPETITION

69. Plaintiff repeats the allegations of paragraphs 1-68 as if fully set forth.

70. This is a claim for Unfair Competition under the Common Law of New Jersey. In order to prove this claim Plaintiff must prove the same elements as Count III.

71. By the Defendant's unauthorized use of the InGrass trade name, the Defendant is liable for unfair competition in violation of the New Jersey common law of Unfair Competition and has caused / is likely to cause confusion, mistake, or to deceive the public.

72. Defendant's unlawful conduct will continue to damage Plaintiff unless enjoined by this Court. Plaintiff has no adequate remedy at law.

### COUNT V: NEW JERSEY TRADEMARK INFRINGEMENT

73. Plaintiff repeats the allegations of paragraphs 1-72 as if fully set forth.

74. This is an action for New Jersey Trademark Infringement N.J.S.A. § 56:3-13.16. To succeed in this claim Plaintiff must show that Defendant used a protected mark without the consent of the owner or designee; or that Defendant reproduced, imitated or counterfeited a mark to advertisements. Id.

75. The Defendant's unauthorized use of the InGrass trade name in connection with advertising and marketing of goods online constitute appropriation of Plaintiff's trademark, in direct violation of the New Jersey Trademark Act, N.J.S.A. § 56:3-13.16.

76. The activities of the Defendant alleged herein have caused and, if not enjoined, will continue to cause, irreparable harm to the rights of the Plaintiff. Plaintiff has no adequate remedy at law.

77. Plaintiff has also suffered economic and non-economic damages and is entitled to compensation. Plaintiff demands all damages allowable by law.

### COUNT VI: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

78. Plaintiff repeats the allegations of paragraphs 1-77 as if fully set forth.

79. The acts of the Defendant as aforesaid constitute Tortious Interference with Prospective Economic Advantage under the common law of the State of New Jersey. To establish this claim Plaintiff need only show (i) reasonable expectation of economic advantage (ii) malicious actions by the Defendant, (iii) a reasonable probability Plaintiff would have obtained the anticipated benefit and (v) damages to Plaintiff.

Case No. _____

80. Plaintiff had a reasonable expectation of economic advantage from his business's reputation, goodwill and trademark. Plaintiff reasonably expected this property to yield economic business as it had in the past.

81. Defendants acted maliciously in refusing to take down clearly fraudulent and counterfeit advertisements despite an obligation to do so, and repeated notice of the problem.

82. Defendants waived any right to claim they did not have an obligation as they took this obligation on further by reliance in the multiple emails referenced *supra.*

83. There is a reasonable probability that Plaintiff would have obtained the anticipated benefit absent Defendant's malicious actions.

84. Plaintiff was damaged in the form of loss of profits, loss of value to goodwill and trademark and in other ways. Plaintiff is entitled to relief in the form on compensatory damages and prays for all damages and relief allowable under the law.

## COUNT VII: NEW JERSEY COMMON LAW GROSS NEGLIGENCE

85. Plaintiff repeats the allegations of paragraphs 1-84 as if fully set forth here.

86. The acts of the Defendant as aforesaid constitute Gross Negligence under the common law of the State of New Jersey. Gross Negligence in New Jersey is defined as the want or absence of, or failure to, exercise slight care of diligence.

87. The Defendant had a duty to prevent Trademark Infringement, to not aide and abet violations of the Lanham Act and to honor the obligations it thrust upon itself when it assured Plaintiff that they were working to resolve the issue in multiple correspondences.

88. The Defendants breached this duty repeatedly and to this day continue to breach this duty as they promote counterfeit brands imitating "InGrass" online in a gigantic media advertisement campaign.

89. The aforementioned breaches have damaged Plaintiff through loss of profits, loss of brand recognition and goodwill as well as loss of value of trademark.
The Defendant was indifferent to the consequences of their advertising and promoting of product misrepresenting and infringing on the InGrass trade name.

90. The Defendant was indifferent to the consequences of their inaction to remedy the misrepresentation and infringement of the InGrass trade name.

91. The acts complained have damaged Plaintiff and Plaintiff prays for all relief legal and proper from the Court including to the extent allowable, punitive damages.

### COUNT VIII: MONOPOLIZATION UNDER § 2 OF THE SHERMAN ACT

92. Plaintiff repeats the allegations of paragraphs 1-91 as if fully set forth here.

93. This is an action under §2 of the Sherman Act, in order to succeed Plaintiff need only show that Defendant has engaged in predatory or anticompetitive conduct with specific intent to monopolize and that there is a dangerous probability of Defendant achieving monopoly power.

94. Defendants have attempted and largely succeeded in creating a monopoly in online advertising for most niche markets. Given the inability of smaller firms to compete with these campaigns, Defendants have created a dangerous situation whereby they effectively control the market. Even GoogleAds cannot stop Defendants from their continued unethical practices, as acknowledged by their own legal staff.

95. By such acts, practices, and conduct set forth, the Defendant has unlawfully monopolized advertising of artificial turf in online search engines in violation of § 2 of the Sherman Act.

96. The Defendant maintains power from unlawful acts, practices, and conduct set forth herein, distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident.

97. By reason of the Defendant's violation of § 2 of the Sherman Act, the Plaintiff has been injured in its business or property including through the loss of past, present, and future profits, by the loss of customers and potential customers, and by the loss of goodwill and brand image.

98. The Plaintiff has suffered damage as a result of these unlawful actions and prays for all compensatory damages and other relief as allowable by law.

### COUNT VIII
### UNJUST ENRICHMENT

Case No. _____

99. Plaintiff repeats the allegations of paragraphs 1-49 as if fully set forth here.

100. This is a claim for unjust enrichment under the common law of New Jersey. To prevail Plaintiff need only show that Defendant received a benefit and that retention of that benefit without payment would be unjust. 135 N.J. 539, 554, 641 A.2d 519 (N.J. 1994).

101. Plaintiff has spent countless hours throughout years building a valuable brand "InGrass" that is known for quality turf.

102. Defendant has utilized the reputation of Plaintiff's company to profit through online advertising as less viable products are readily purchased through search engines after the term "InGrass" is placed on these products – by Defendants.

103. Each purchase therein reduces the value of Plaintiffs brand, damaging Plaintiff.

104. It would be unjust, and inequitable to allow Defendants to retain the profits that were earned at the expense of Plaintiff's reputation. It is in the interest of justice and equity that these profits be disgorged following a proper Court sanctioned accounting.

## COUNT IX
## PROMISSORY ESTOPPEL

105. Plaintiff repeats the allegations of paragraphs 1- 49 as if fully set forth here.

106. This is a claim for promissory estoppel. In order to succeed Plaintiff need only show a clear and definite promise made by Defendant, Defendant expected that promise to be relied upon, and that Plaintiff did reasonably rely on that promise to their substantial detriment.

107. Defendant made a promise to Plaintiff, namely that Defendant would cease all infringement of Plaintiff's mark. Defendant made this promise in countless emails through countless agents to Plaintiff directly.

108. Defendant intended and expected Plaintiff to rely on this promise, Plaintiff would have taken steps to repair his Mark absent these promises as evidenced by Plaintiff's constant policing of his brand.

109. Plaintiff did rely on this promise and relied on Defendants promise to their substantial detriment and have been damaged.

Case No. _____

110. Plaintiff prays for all damages and relief available under the law.

## COUNT X
## PRAYER FOR INJUNCTIVE RELIEF

111. Plaintiff repeats the allegations of paragraphs 1- 110 as if fully set forth here.

112. This is claim for injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. To succeed in this claim Plaintiff need only prove that Plaintiff is at risk of irreparable injury. Fed. R. Civ. Pro. 65.

113. Plaintiff intends to and does hereby certify this Complaint.

114. Plaintiff has given Defendant ample notice of its need for immediate relief from the present conditions and has provided notice of an intent to file for injunctive relief. *See Exhibit E.*

115. Plaintiff has and continues to be harmed by the damage to their brand, each day that passes the brand and its reputation ("InGrass") is being destroyed, every lower quality product that reaches a consumer presents a harm that cannot be repaired as Plaintiff cannot simply reach out to that customer and explain that they purchased from an imitator to the contrary that customer is lost forever if they are disappointed with imitation "InGrass". Plaintiff has no remedy at law for this damage and prays for an injunction.

116. Plaintiff should not have to file bond for the aforementioned injunction because there is no harm to Defendants. Defendants have no claim to loss of income that results from illegal or unlawful activity. The aforementioned acts are unlawful violations of State and Federal law as explained herein – as such there is no risk of harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant as follows:

1. Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C. §1116, preliminarily and permanently restraining and enjoining the Defendant, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with the Defendant from engaging in any activity constituting trademark infringement and/or unfair competition against the

Case No. _____

Plaintiff as alleged in this Complaint, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, and the use of any marks that may cause likelihood of confusion against the Plaintiff's Marks.

2. That Defendant be required to pay to the Plaintiff compensatory damages in the amount of three million six hundred thousand dollars and zero cents ($3,600,000.00) for the injuries sustained by the Plaintiff in consequence of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C. §1117 because of the willful and unlawful acts as alleged herein. This demand is exclusive of attorney's fees and applicable interest.

3. That the Defendant be required to account for and pay over to the Plaintiff all gains, profits and advantages derived by them from the unlawful activities alleged herein.

4. That the Defendant be required to pay to the Plaintiff all of its litigation expenses, including but not limited to the costs of this action.

5. That the Plaintiff be awarded such other and further relief as this Court may deem just and proper.

Dated: April 23 2015

Respectfully submitted,
Steven Lasoff
Plaintiff in Pro Se
217 Wyckoff Road
Eatontown, New Jersey 07724
Steven.lasoff@verizon.net

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury in this matter.

Respectfully submitted,
Steven Lasoff
Plaintiff in Pro Se
217 Wyckoff Road
Eatontown, New Jersey 07724
Steven.lasoff@verizon.net